909 F.2d 1486
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Gale E. DRYDEN, Plaintiff-Appellant,
v.
SUN LIFE ASSURANCE COMPANY OF CANADA, INCORPORATED,
Defendant-Appellee.
 No. 89-3495.
 United States Court of Appeals, Seventh Circuit.
 Argued May 8, 1990.
Decided July 31, 1990.
 
 Before BAUER, Chief Judge, and MANION, Circuit Judge, and ESCHBACH, Senior Circuit Judge.
 
 ORDER
 
 1
 Sun Life Assurance Company of Canada ("Sun Life") notified certain policyholders that they would receive lower dividends if they borrowed against the cash value of their life insurance policies. Gale E. Dryden, who had borrowed against three of four life insurance policies purchased from Sun Life, sued Sun Life, initially alleging federal and Indiana securities law violations, common law fraud, breach of contract, and federal and state RICO violations. Dryden later abandoned the RICO counts and added an unfair discrimination claim for benefits paid on a life insurance contract in violation of Indiana Code Section 27-4-1-4. The district court granted Sun Life's motion to dismiss on all counts. Dryden appeals only the dismissal of the breach of contract count. We affirm.
 
 I.
 
 2
 Dryden's breach of contract claim stems from Sun Life's implementing a plan entitled "Operation Equity". Under this plan, Sun Life decreased the "dividends" (which are really surplus premiums) allocated to policyholders with outstanding loans, and increased the so-called dividends allocated to policyholders with no outstanding loans. The company implemented this new program because borrowers on their insurance policies took loans at rates of 5 or 6 percent, a rate substantially lower than the return the company could receive investing that money elsewhere. Investment of this surplus premium would normally allow the company to pay larger dividends; policy borrowers reduce the opportunity for that potential return. Sun Life therefore reduced the amount of dividends policy borrowers would receive, since by borrowing they were already receiving more than non-borrowers.
 
 
 3
 In implementing this "direct recognition program", as it is commonly referred to in the insurance industry, the company first offered Dryden and other borrowing policyholders an opportunity to repay or at least reduce the amount of their loans, and gave each borrower a year's grace period before the program would take effect. Dryden had outstanding loans on at least three of his policies when Sun Life implemented Operation Equity. His Third Amended Complaint claims that Sun Life breached its contract when it changed the method of distributing its surplus premiums. Dryden now argues additionally that his breach of contract count stated a claim for relief since he would be able to present facts showing a violation of the doctrine of good faith and fair dealing.
 
 II.
 
 4
 The only issue properly before this court is whether the district court erred in dismissing Dryden's breach of contract allegation for failure to state a cause of action. Dryden's argument in the district court and on appeal is that Sun Life breached the insurance contract when it changed the method of distributing its surplus premiums. Dryden's Third Amended Complaint, Count VII, states that "Sun Life, through the institution of its 'Operation Equity' program unilaterally and without exchanging consideration materially altered the terms and conditions of said insurance contract." Dryden's brief on appeal states that "Sun Life failed to reserve the right to reduce any policyholder's dividends, based upon that policyholder's borrowing activity on any particular policy."
 
 
 5
 The district court found that the contract between Dryden and Sun Life gave the Sun Life Board of Directors sufficient discretion to adjust the dividend apportionment under Operation Equity, and since the Board simply exercised its clear contractual discretion, Dryden failed to state a cause of action for breach of contract. We apply a de novo standard for reviewing a dismissal for failure to state a claim.
 
 
 6
 The well-pleaded factual allegations of the complaint and all reasonable inferences which follow from the allegations must be taken as true. Kush v. American States Ins. Co., 853 F.2d 1380, 1382 (7th Cir.1988). A complaint should not be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).
 
 
 7
 Corcoran v. Chicago Park Dist., 875 F.2d 609, 611 (7th Cir.1989).
 
 
 8
 We agree with the district court that "it is clear that Dryden can prove no set of facts in support of his breach of contract claim which would entitle him to relief." To state a cause of action for breach of contract under Indiana law, a plaintiff must allege the nonperformance or defective performance of a defendant's contractual obligations. Strong v. Commercial Carpet Co., 163 Ind.App. 145, 322 N.E.2d 387, 391 (Ind.App.1975). The contractual terms of the Dryden-Sun Life agreements include Dryden's insurance applications,[1] the policies themselves, and the Sun Life by-laws.[2] Each of these documents contain provisions which reserve to the company the right to change the method of allocating its divisible premium surplus.
 
 
 9
 The insurance policy applications filed by Dryden state that Sun Life has "the right to adopt or change any basis or method for distribution of surplus and for the determination of any amount apportioned by way of dividend to said policy." The actual policies provide that Sun Life has the right to "allot as a dividend such amount as may be apportioned to the policy by the Company from that portion of the Company's surplus distributed by the Company." Sun Life's by-laws provide that
 
 
 10
 [t]he Board of Directors, if it shall deem it for the interest of the Company may return to the holders of policies or other instruments such part or parts of the actual realized surplus of the Company, in such parts, shares and proportions, and at such time and in such manner as it may deem advisable....
 
 
 11
 Taken together, these provisions clearly gave Sun Life the power, without breaching the insurance policies, to implement Operation Equity. Nothing in the policies prevents Sun Life from taking into account, when determining dividend distribution, the outstanding loans of borrowers and the amount they receive from the company in forms other than dividends. The Board's decision to apportion dividends taking into account the benefits borrowers received over and above the benefits received by non-borrowers was merely an exercise of contractual discretion. Dryden presents no valid claim that the contractual language be read differently. Nor does he support any allegation of defective performance or non-performance by Sun Life. In short, he states no breach of contract cause of action.
 
 
 12
 Dryden could have characterized Sun Life's implementation of Operation Equity as a means of raising the 5 or 6 percent interest rate stated in the policies. Indeed, in response to questions at oral argument, Dryden stated that he first argued the interest rate increase issue in the district court, but later dropped the allegation and failed to raise it on appeal. He touched on this argument in his Third Amended Complaint only in relation to Sun Life's alleged misrepresentation in implementing Operation Equity and providing to policyholders information regarding the change. Dryden has not appealed the district court's dismissal of this count. Any allegation relating to Sun Life's breach of the contract's loan provision terms by implementing Operation Equity has thus been waived for purposes of this appeal.
 
 III.
 
 13
 Although the breach of contract claim was the only issue Dryden preserved for appeal, he nevertheless attempts to bootstrap a derivative claim--that of a breach of the doctrine of good faith and fair dealing. It is well settled that a party may not argue a claim on appeal that he did not first raise before the district court. Thomason v. Nachtrieb, 888 F.2d 1202, 1205 (7th Cir.1989). Thus, by including such claims in his appellate brief, a plaintiff cannot retrospectively amend his complaint. Id. Dryden failed to raise his good faith and fair dealing claim in his initial complaint, his three amended complaints, or in any other pleadings to the district court. All four versions of his complaint, including the Third Amended Complaint which is the subject of our review, alleged only a breach of express contract terms: "Sun Life, through the institution of its 'Operation Equity' program unilaterally and without exchanging consideration materially altered the terms and conditions of said insurance contract." Dryden only belatedly raised the good faith and fair dealing argument in his Rule 60(b) Motion for Relief from Judgment, filed in the district court simultaneously with this appeal. He did not appeal the denial of that motion, and both District Judge Dillin and this court granted Sun Life's motion to strike from the record and briefs on appeal any documents or arguments relating to Dryden's Motion for Relief. For our purposes, therefore, the good faith violation claim was never specifically presented to the district court.
 
 
 14
 Nevertheless, Dryden claims refuge in another count of his complaint, which alleged fraud by Sun Life in making material misrepresentations about Operation Equity. He insists that the fraud claim stated facts which might constitute a breach of the doctrine of good faith and fair dealing, thus preserving the issue before the district court. Sun Life argues that those allegations are insufficient to raise the good faith claim for two alternative reasons: first, those allegations are no longer valid because Judge Dillin ruled that there were no misrepresentations, and second, even if the allegations are viable, they are inadequate to incorporate a good faith and fair dealing claim. We need only focus on the second reason.
 
 
 15
 The allegations contained in the Third Amended Complaint do not incorporate a claim for violation of the doctrine of good faith and fair dealing. The alleged misrepresentations, listed in paragraphs 50(a) through 50(j) of Dryden's Third Amended Complaint, concerned the procedure for implementing Operation Equity and the information provided policyholders about the program, not whether the decision to implement the program was outside of the Board's discretion or a breach of the contract. In fact, the fraud claim makes no reference to the contract count which alleged that Sun Life materially altered the terms of the contract. No reasonable reading of the allegations in Dryden's fraud and misrepresentation counts put Sun Life on notice that Dryden was claiming a breach of the doctrine of good faith in connection with his breach of contract claim.
 
 
 16
 Moreover, the doctrine of good faith and fair dealing is not simply part of a claim of a breach of express contract terms. Rather, it is a separate claim which the district court properly declined to read into the express breach of contract allegations. Dryden's argument that he should have been allowed to proceed beyond the pleading stage to present evidence regarding the good faith and fair dealing claim is unfounded since he did not distinctly raise that claim in the first place. He cannot belatedly backfill the gap he apparently left in his already thrice-amended complaint. Also, as counsel conceded at oral argument, Dryden received all that he had requested in his Motion for Relief from the Stay of Discovery; he sought only documents relating to Sun Life's calculations of the amount in controversy. He made no request for information regarding this or any other cause of action. His own inaction, not the action of the district court, impeded his efforts to properly raise the good faith argument. Dryden did not properly present the issue to the district court, and he certainly has not preserved it on appeal.
 
 
 17
 For the above reasons, the district court's dismissal of Dryden's breach of contract claim is
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 Ind.Code Ann. Sec. 27-1-12-6(3) (Burns 1986), and the policies themselves provide that the policy application is attached to and made part of the policy
 
 
 [2]
 In Indiana, an insurance company's by-laws which are not inconsistent with the provisions of an insurance policy bind the policyholder. Brashears v. Perry County Farmers Protective Ins. Co., 51 Ind.App. 8, 98 N.E. 889, 890 (1912)